## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ELIZABETH FRANKHOUSER,** | ) | **Case No. 3:18-cv-180** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CLEARFIELD COUNTY CAREER AND** | ) | |
| **TECHNOLOGY CENTER, FRANKLIN** | ) | |
| **WALK, TODD JEFFERIES, GREGORY** | ) | |
| **PALADINA, and DOUG MCCLELLAND,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

### I.    Introduction

Pending before the Court are Defendants Franklin Walk and Doug McClelland's[1] Motion for Partial Dismissal of Plaintiff's First Amended Complaint (ECF No. 22) and Defendants Clearfield County Career and Technology Center, Todd Jefferies, and Gregory Paladina's Motion for Partial Dismissal of Plaintiff's Amended Complaint Pursuant to Rule 12(b)(6) (ECF No. 20). These Motions have been fully briefed and are ripe for disposition. (*See* ECF Nos. 21, 23, 24, 25.)

For the reasons that follow, Defendants' Motions (ECF Nos. 22, 20) are **GRANTED IN PART** and **DENIED IN PART.**

---

[1] The caption and Ms. Frankhouser's First Amended Complaint identify this individual as "Doug McClelland," although Defendants indicate that "McClellan" is the appropriate spelling. (*See* ECF No. 22 at 2.) The Court will use the spelling in the caption unless and until one of the parties files a motion to correct caption.

## II. Jurisdiction and Venue

Plaintiff Elizabeth Frankhouser brings five federal claims over which this Court has jurisdiction pursuant to 28 U.S.C. § 1331. Furthermore, this Court has supplemental jurisdiction over Ms. Frankhouser's three state-law claims under 28 U.S.C. § 1367(a).

Venue is proper in the Western District of Pennsylvania under 28 U.S.C. § 1391(b)(2), as a substantial portion of the events and omissions giving rise to Ms. Frankhouser's claims occurred in this District.

## III. Background[2]

Defendant Clearfield County Career and Technology Center ("CCCTC") is an educational facility in Clearfield County, Pennsylvania. (ECF No. 17 ¶ 2.) In July 2015, Ms. Frankhouser was hired as the Executive Director of CCCTC. (*Id.* ¶ 12.) During her nearly two years in this position, Ms. Frankhouser received two satisfactory annual evaluations and no negative annual evaluations. (*Id.* ¶ 13.)

### A. Sexual Harassment and Retaliation

Soon after she was hired, Defendant Todd Jefferies, who was a member of CCCTC's School Board, Joint Operating Committee President, and Ms. Frankhouser's supervisor, began sexually harassing Ms. Frankhouser. (*Id.* ¶¶ 4, 14.) Mr. Jefferies regularly commented on Ms. Frankhouser's appearance and "stare[d] Ms. Frankhouser up and down in a demeaning and sexual manner on many occasions while making sexual and sexist remarks to her." (*Id.* ¶¶ 15-17.)

---

[2] The factual allegations in this Background are taken from Plaintiff's First Amended Complaint and are assumed to be true for purposes of deciding the present Motions.

Ms. Frankhouser reported this behavior to Defendant Gregory Paladina, CCCTC's Superintendent of Record. (*Id.* ¶¶ 6, 18.) However, after Ms. Frankhouser reported Mr. Jefferies, Mr. Jefferies began to retaliate against her through enhanced job scrutiny and other "negative and unfavorable behavior." (*Id.* ¶ 18.)

## B. Unauthorized Dropbox Access

Ms. Frankhouser's position required extensive work on her CCCTC-issued computer. (*Id.* ¶ 19.) Defendant Franklin Walk, who was CCCTC's Internet Technology Administrator, was responsible for resolving Ms. Frankhouser's work-related computer problems. (*Id.* ¶¶ 3, 20.) Ms. Frankhouser experienced such problems during the 2016-2017 school year. (*Id.* ¶ 21.) As a result, Mr. Walk replaced Ms. Frankhouser's hard drive. (*Id.* ¶ 22.) After Mr. Walk replaced the hard drive, Ms. Frankhouser's work-related computer applications and file extensions had to be reloaded and re-synched. (*Id.* ¶ 23.)

Dropbox was one of the applications that had to be reloaded. (*Id.*) Dropbox is an application that enables users to store files on the "cloud" and access those files using a login on any Internet-connected device. (*Id.* ¶¶ 24-27.) Synching a Dropbox account with a device does not save files on the hard drive of that device; instead, it provides an access point for files that are stored remotely in the Dropbox cloud. (*Id.* ¶ 28.) In order to synch a device with a Dropbox account, a user must enter a username and password. (*Id.* ¶ 29.) Dropbox also uses other levels of security and encryption to safeguard users' private data. (*Id.* ¶ 30.)

Although Ms. Frankhouser's Dropbox account was private and was hosted remotely in the Dropbox cloud, CCCTC authorized its use for work-related matters. (*Id.* ¶ 32.) Thus, it contained both personal and work-related folders, including personal photographs. (*Id.* ¶¶ 31,

3

33.) Among the personal photographs were two photographs of Ms. Frankhouser's boyfriend that "could be considered borderline explicit." (*Id.* ¶ 34.) The Dropbox also contained photographs of parties Ms. Frankhouser had attended. (*Id.* ¶ 36.) Importantly, with the exception of a photograph of Ms. Frankhouser skydiving, she never stored any of her personal photographs on her work computer. (*Id.* ¶ 37.)

Ms. Frankhouser's Dropbox account was accessible only with her username and password. (*Id.* ¶ 38.) This username and password were listed on an Excel spreadsheet that she used to store various personal and work-related usernames and passwords. (*Id.* ¶¶ 39, 41.)

Mr. Walk knew of the existence and location of this spreadsheet. (*Id.* ¶ 40.) While he was replacing Ms. Frankhouser's hard drive, he accessed the spreadsheet and used Ms. Frankhouser's Dropbox username and password listed therein to access her private Dropbox account. (*Id.* ¶ 41.) Mr. Walk then took some of the aforementioned personal photographs from the Dropbox. (*Id.* ¶¶ 75-77, 80.) Mr. Walk gave the photographs to Defendant Doug McClelland, CCCTC's Truck Driver Recruiter, who delivered them to Mr. Paladina and Mr. Jefferies. (*Id.* ¶¶ 75-76.) Mr. Walk and Mr. McClelland took these actions without Ms. Frankhouser's permission in order to "undermine her position and defame her good name."[3] (*Id.* ¶¶ 42, 80.)

---

[3] In August 2017, Ms. Frankhouser was investigating Mr. McClelland. (ECF No. 17 ¶¶ 5, 43.) Mr. McClelland was aware of the investigation and that Ms. Frankhouser initiated it. (*Id.* ¶ 44.) Around that time, Mr. McClelland was overheard stating that he would "like to kill" Ms. Frankhouser for initiating the investigation. (*Id.* ¶ 45.) Also in August 2017, Mr. Walk's wife was one of two candidates who applied for an open position with CCCTC. (*Id.* ¶ 47.) Ms. Frankhouser formed the committee that interviewed the applicants. (*Id.* ¶ 48.) Mr. Walk's wife was not selected to fill the position. (*Id.* ¶ 49.) Thus, both Mr. Walk and Mr. McClelland, who were close friends, harbored personal animus toward Ms. Frankhouser. (*Id.* ¶¶ 46, 50.) Ms. Frankhouser alleges that Mr. Walk and Mr. McClelland's actions, as described in this Background, were motivated by this animus.

4

## C. Ms. Frankhouser's Forced Resignation

In August 2017, Mr. Paladina and CCCTC's Superintendent, Michelle Dutrow,[4] accused Ms. Frankhouser of storing "naked pictures" and "inappropriate pictures of her 'partying'" on her CCCTC-issued computer and cellphone, based on the information Mr. Walk had provided to Mr. Paladina. (*Id.* ¶¶ 51-52, 75-76.) The photographs at issue included the previously discussed photographs of Ms. Frankhouser's boyfriend and of Ms. Frankhouser at parties. (*Id.* ¶¶ 52-53.) Ms. Frankhouser had never stored these photographs on CCCTC-issued property.[5] (*Id.* ¶¶ 55, 57.)

On August 24, 2017, Mr. Paladina informed Ms. Frankhouser that she would be forced to resign. (*Id.* ¶ 58.) In return for her resignation, Mr. Paladina told Ms. Frankhouser that he would not report any of the photographs to the Pennsylvania Department of Education. (*Id.* ¶ 59.)

On August 28, 2017, Mr. Paladina emailed a separation agreement (the "Agreement") to Ms. Frankhouser. (*Id.* ¶ 62.) Although the Agreement provided for a 21-day review period in which to consider and sign it, Mr. Paladina called Ms. Frankhouser and ordered her to sign and return the Agreement that same day. (*Id.* ¶¶ 63, 68.)

Mr. Paladina told Ms. Frankhouser that if she voluntarily signed the Agreement, he would not contact the Pennsylvania Department of Education, would not allow anything to happen to her certifications, would compensate her for unused vacation and personal days, would not dispute her unemployment compensation claim, and would maintain her health insurance coverage through October 31, 2017. (*Id.* ¶¶ 64-65.) Under this "duress and coercion" and without

---

[4] Ms. Dutrow is not a party to this action.

[5] Mr. Paladina later confirmed to Ms. Frankhouser that a subsequent investigation revealed that no inappropriate photographs were on Ms. Frankhouser's CCCTC-issued computer or cell phone. (*Id.* ¶ 78.)

seeking the advice of counsel, Ms. Frankhouser signed and faxed the resignation documents to Mr. Paladina on August 29, 2017. (*Id.* ¶¶ 67, 70.) Ms. Frankhouser was not afforded a hearing prior to her forced resignation. (*Id.* ¶¶ 71-72.)

CCCTC replaced Ms. Frankhouser with a male. (*Id.* ¶¶ 82-83.) Mr. Jefferies had previously indicated that he would have preferred Ms. Frankhouser's eventual replacement to hold her position instead of her. (*Id.* ¶ 84.) The male replacement was given higher pay raises than Ms. Frankhouser had been given although both Ms. Frankhouser and her replacement received positive reviews.

### D. Procedural History

On December 4, 2018, Ms. Frankhouser filed her First Amended Complaint (ECF No. 17) in which she brought eight claims against Defendants. The First Amended Complaint included claims for (1) Title VII violation for sexual harassment, gender discrimination, and retaliation against CCCTC; (2) violation of the Civil Rights Act against all Defendants; (3) Fourth Amendment violation against all Defendants; (4) violation of the Equal Pay Act against CCCTC; (5) violation of the Fourteenth Amendment against CCCTC; (6) invasion of privacy against all Defendants; (7) defamation against all Defendants; and (8) intentional infliction of emotional distress against all Defendants.

On December 18, 2018, CCCTC, Mr. Jefferies, and Mr. Paladina moved to dismiss Counts II, III, V, VI, VII, and VIII of the First Amended Complaint. (ECF No. 20 ¶ 5.) On the same date, Mr. Walk and Mr. McClelland moved to dismiss Counts II, III, and VIII of the First Amended Complaint. (ECF No. 22 ¶¶ 5-6.) On January 12, 2019, Mr. McClelland and Mr. Walk moved to

join in certain arguments raised in CCCTC, Mr. Jefferies, and Mr. Paladina's Motion for Partial Dismissal. *(See* ECF No. 29.)

## IV. Legal Standard

A complaint may be dismissed under Federal Rule of Civil Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." *Connelly v. Lane Constr. Corp.,* 809 F.3d 780, 786 (3d Cir. 2016). But, detailed pleading is not generally required. *Id.* The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

Under the pleading regime established by the Supreme Court, a court reviewing the sufficiency of a complaint must take three steps.[6] First, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal,* 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[6] Although the Supreme Court described the process as a "two-pronged approach," *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009), the Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly,* 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010)).

defendant is liable for the misconduct alleged." *Id.; see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## V. Discussion

As a preliminary matter, the Court notes that Defendants did not move to dismiss Count I—Title VII sexual harassment, gender discrimination, and retaliation, or Count IV—violation of the Equal Pay Act. Thus, the Court will not address these claims. The Court will discuss each of the claims that Defendants seek to dismiss in turn.

### A. Count II—Violation of the Civil Rights Act

Ms. Frankhouser brings Count II against all Defendants. CCCTC, Mr. Paladina, Mr. Jefferies, and Mr. McClelland move to dismiss this Count.

#### 1. The Parties' Arguments

In Count II, which Ms. Frankhouser titles "Violation of the Civil Rights Act" and which she brings pursuant to 42 U.S.C. § 1983, Ms. Frankhouser alleges that Defendants' unlawful access of her Dropbox violated her rights under the Fourth Amendment of the U.S. Constitution. (ECF No. 17 ¶ 97.)

Defendants CCCTC, Mr. Jefferies, and Mr. Paladina move to dismiss this Count, claiming that Ms. Frankhouser does not have an expectation of privacy in information stored in her Dropbox. (ECF No. 21 at 12.) Furthermore, they explain that CCCTC's Board Policy Manual (the "Manual") states:

> Users [of CCCTC's compuer resources] shall have no expectation of privacy in anything they create, store, send, delete, receive, or display on or over the Careers

8

[*sic*] Center's Internet, computers or network resources, including personal files or any use of the Career Center's Internet, computers or network resources.

(*Id.* at 13; ECF No. 21-1 at 3.) Based on the Manual, Defendants argue that Ms. Frankhouser's Fourth Amendment claim fails as a matter of law.

Mr. McClelland also moves to dismiss Count II, arguing that, based on the allegations in the First Amended Complaint, Mr. McClelland was not involved in the inappropriate accessing of Ms. Frankhouser's hard drive or Dropbox. (ECF No. 23 at 9.)

In response to Mr. McClelland's argument, Ms. Frankhouser claims that she "clearly outlined the collusion and conspiracy between Mr. Walk and Mr. McClelland" by alleging that Mr. McClelland had ill feelings toward her and that he received photographs from Mr. Walk that he delivered to Mr. Jefferies. (ECF No. 25 at 11.) As for CCCTC, Mr. Paladina, and Mr. Jefferies's argument, Ms. Frankhouser asserts that Defendants misunderstand the nature of Dropbox. (ECF No. 24 at 11-12.) She explains that she never synched the photographs at issue with her CCCTC-issued computer and thus she had a reasonable expectation of privacy in the photographs stored on her Dropbox. (*Id.* at 12-13.)

## 2. Legal Standard

Ms. Frankhouser brings Count II pursuant to 42 U.S.C. § 1983. Section 1983 provides, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, usage, of any State or Territory of the District of Columbia, subjects, or causes to be subject, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress . . . .

9

42 U.S.C. § 1983. "Section 1983 does not create any rights, but provides a remedy for violations of those rights created by the Constitution or federal laws." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 907 (3d Cir. 1997) (citing *Baker v. McCollan*, 443 U.S 137, 144 n.3 (1979)); *Salyer v. Hollidaysburg Area Sch. Dist.*, CIVIL ACTION NO. 3:16-57, 2018 WL 3579838, at *7 (W.D. Pa. July 25, 2018) (Gibson, J.) (quoting *Morse*, 132 F.3d at 907). "A plaintiff cannot prevail in an action brought under § 1983 without establishing an underlying violation of a federal constitutional or statutory right." *Ickes v. Borough of Bedford*, 807 F. Supp. 2d 306, 315 (W.D. Pa. 2011) (Gibson, J.) (citing *Blessing v. Freestone*, 520 U.S. 329, 340 (1997)).

Preliminarily, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). "A plaintiff makes sufficient allegations of a defendant's personal involvement by describing the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriaga*, 806 F.3d at 222 (citing *Rode*, 845 F.2d at 1207); *see Whitenight v. Elbel*, 2:16-CV-00646-CRE, 2017 WL 6026379, at *6, *8 (W.D. Pa. Dec. 5, 2017). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode*, 845 F.3d at 1207. Moreover, "[w]hile knowledge may be inferred from a case's circumstances, it must be actual, not constructive, and a plaintiff must describe 'specific conduct by state officials which violates some constitutional right.'" *Hodges v. Mankey*, 651 F. App'x 81, 83 (3d Cir. 2016) (quoting *Chavarriaga*, 806 F.3d at 222).

Next, "[r]ecovery in a [§] 1983 action requires the presence of two elements: deprivation of a right secured by the 'Constitution and laws' of the United States, and a showing that such

deprivation occurred under color of state law." *Gillard v. Schmidt*, 579 F.2d 825, 827 (3d Cir. 1978) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151 (1970)). Here, Ms. Frankhouser alleges that she was deprived of her Fourth Amendment rights.

The Fourth Amendment prohibits unreasonable searches and seizures. *See* U.S. Const. amend. IV; *see also United States v. Price*, 558 F.3d 270, 277 (3d Cir. 2009) (citing *Illinois v. Rodriguez*, 497 U.S. 177 (1990)). The mandates of the Fourth Amendment have been applied to the states through the Fourteenth Amendment. *See Elkins v. United States*, 364 U.S. 206, 213 (1960).

"The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.'" *Walker v. Coffey*, 905 F.3d 138, 144 (3d Cir. 2018) (quoting *California v. Ciraolo*, 476 U.S. 207, 211 (1986)). To make this determination, a court must first consider "whether an individual has 'manifested a subjective expectation of privacy in the object of the challenged search.'" *Id.* (quoting *Ciraolo*, 476 U.S. at 211). Next, a court must consider "whether 'society [is] willing to recognize that expectation as reasonable.'" *Id.* (alteration in original) (quoting *Ciraolo*, 476 U.S. at 211).

Although often associated with criminal cases, "the Fourth Amendment's protection extends beyond the sphere of criminal investigations." *City of Ontario v. Quon*, 560 U.S. 746, 455 (2010). Particularly relevant here, "[t]he Fourth Amendment applies . . . when the Government acts in its capacity as an employer." *Id.* at 756 (citing *Treasury Emps. v. Von Raab*, 489 U.S. 656, 665 (1989)); *see also O'Connor v. Ortega*, 480 U.S. 709, 714 (1987) ("[W]e have held in the past that the Fourth Amendment governs the conduct of school officials.").

In the workplace context, it has been held that "[p]ublic employees . . . are entitled to a reasonable expectation of privacy in their place of work." *Gwynn v. City of Phila.*, 866 F. Supp. 2d

11

473, 482 (E.D. Pa. 2012) (citing *O'Connor*, 480 U.S. at 717). For example, public employees have a reasonable expectation of privacy in their offices, desks, and file cabinets. *O'Connor*, 480 U.S. at 719.

However, the application of the "reasonable expectation of privacy" test to the workplace is more difficult in the context of modern technology. The Supreme Court has instructed that "[c]ourt[s] must proceed with care when considering the whole concept of privacy expectations in communications made on electronic equipment owned by a government employer." *Quon*, 560 U.S. at 759; *see Walker v. Coffey*, 905 F.3d 138, 145 (3d Cir. 2018) ("[T]he Supreme Court has historically expressed sensitivity to advances in technology, though in recent years the Court has also exercised caution in this area." (footnote omitted)). "The judiciary risks error by elaborating too fully on the Fourth Amendment implications of emerging technology before its role in society has become clear." *Quon*, 560 U.S. at 759.

### 3. CCCTC, Mr. Jefferies, and Mr. Paladina's Motion for Partial Dismissal

As explained above, CCCTC, Mr. Jefferies, and Mr. Paladina assert that Count II should be dismissed because Ms. Frankhouser failed to plausibly allege a reasonable expectation of privacy in her Dropbox account. The Court disagrees.

Ms. Frankhouser alleges that her Dropbox account was a personal account that was accessible only with her private username and password. (ECF No. 17 ¶¶ 29-31, 38); *see Trulock v. Freeh*, 275 F.3d 391, 403 (4th Cir. 2001) (finding a reasonable expectation of privacy in password-protected computer files). While she was authorized to use Dropbox for work-related matters, the files accessible through the Dropbox application were not downloaded to her work computer. (*Id.* ¶¶ 32, 37, 57, 78, 97.) In fact, according to Ms. Frankhouser, "[t]he purpose of a Dropbox

account is to allow users to <u>not</u> clutter up space on their computers by saving items locally, rather, all files are stored on the 'cloud' and can be accessed using a log-in on any [I]nternet[-]connected device." (*Id.* ¶ 27.) The Court finds that under these facts, Ms. Frankhouser has plausibly alleged a reasonable expectation of privacy that was violated by Mr. Walk's unauthorized access of her Dropbox.

Defendants have not pointed to case law that necessitates dismissal of Count II at this stage, likely because this case does not fit easily within Fourth Amendment precedent. For example, it does not involve communications made pursuant to employment, *see, e.g., Walker,* 905 F.3d at 148 (work emails), or from employer-provided devices, *see, e.g., Quon,* 560 U.S. at 760 (messages sent from employer-provided pager). And it does not involve contents saved on an employer-provided computer. *See, e.g., Ober v. Miller,* 2007 WL 4443256, at *17 (M.D. Pa. Dec. 18, 2007) ("The court finds that the prevalence of workplace monitoring of computers makes any expectation of privacy that a public employe[e] has in the contents of his or her computer unreasonable."). Instead, this case involves a personal, password-protected Dropbox account that was downloaded as an application on a work computer but whose files were not downloaded to the work computer. Keeping in mind the Supreme Court's directive to "[p]roceed with care" when considering privacy expectations in the context of modern technology, *see Quon,* 560 U.S. at 759, the paucity of case law discussing Dropbox and privacy expectations,[7] and the stage of the litigation, the Court declines to dismiss Ms. Frankhouser's Fourth Amendment claim.

---

[7] Dropbox has received scant attention in relevant case law. *See Clark v. Teamsters Local Union 651,* 349 F. Supp. 3d 605, 622 (E.D. Ky. 2018) (concluding at summary judgment that because "individuals do not have a reasonable expectation of privacy in their work e-mails, then it logically follows that individuals do not have a reasonable expectation of privacy in a Dropbox account that is tied to their work e-mail and that they lose access to if they lose access to the e-mail"); *Clark v. Teamsters Local Union 651,* Civil Action No.

Defendants' argument that Ms. Frankhouser had no reasonable expectation of privacy in her CCCTC-issued computer does not change this Court's conclusion because Defendants rely on facts not alleged in the First Amended Complaint and misinterpret Ms. Frankhouser's allegations.

First, when arguing that CCCTC's policies expressly provide that employees do not have an expectation of privacy in information stored on CCCTC-provided computers, Defendants rely on the Manual. (ECF No. 21 at 13.) The relevant section of the Manual is attached as an exhibit to Defendants' Brief in Support of their Motion for Partial Dismissal. (ECF No. 21-1.) Defendants assert that the Court may rely on this Manual in deciding the pending Motions because (1) the Manual is a matter of public record and (2) the Manual is an "undisputedly authentic document" on which Ms. Frankhouser's claims are based. (ECF No. 21 at 13 & n.1.)

The Court disagrees. "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *See Pension Benefit Guar. Corp. v. White Cons. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). "For purposes of a motion to dismiss . . . , matters of public record do not include all documents which may be accessible to the public." *In re Rockefeller Ctr. Props., Inc., Secs. Litig.*, 184 F.3d 280, 293-94 (3d Cir. 1999). Instead, "[c]ourts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include criminal case dispositions

5:17-273-DCR, 2017 WL 6395850, at *5 (E.D. Ky. Dec. 13, 2017) (finding that the plaintiff stated a claim for intrusion upon seclusion and unlawful access to a computer because she alleged that the defendants had accessed her personal Dropbox account and explaining that "[j]ust because the defendants allegedly accessed the personal Dropbox account using [the plaintiff's] workplace computer, does not mean that the Dropbox account must plausibly only belong to the [defendant] or solely exist on the computer"); *State v. Pharis*, No. 2 CA-CR 2013-0560, 2014 WL 4057721, at *3 (Ariz. Ct. App. Aug. 15, 2014) (assuming, without explanation, that an individual had an expectation of privacy in his private Dropbox account).

such as convictions or mistrials, letter decisions of government agencies, and public reports of administrative bodies." *Pension Benefit Guar. Corp.*, 998 F.2d at 1197 (citations omitted). These documents constitute "public records" as the public has "unqualified access" to them. *Id.* Judicial opinions and preliminary hearing transcripts are also considered "public records" at the motion to dismiss stage. *See Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, Civ. No. 15-499, 2017 WL 1001602, at *3 n.5 (W.D. Pa. Mar. 15, 2017) (citing *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007)), *aff'd*, 742 F. App'x 628 (3d Cir. 2018). There is no evidence before this Court that the Manual falls within any of these categories and the Court thus declines to consider the Manual on public record grounds. *See Stirone v. McHutchison, Inc.*, 2:17-CV-1644-JFC, 2018 WL 125677, at *1 (W.D. Pa. Mar. 12, 2018) (declining to consider a staff manual at the motion-to-dismiss stage because, among other reasons, it was not a public record); *Logan*, 2017 WL 1001602, at *3 (refusing to consider sexual harassment policies when evaluating a motion to amend because the policies were not within the Third Circuit's definition of public records at the motion-to-dismiss stage).

In addition, while courts may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *Pension Benefit Guar. Corp.*, 998 F.2d at 1197, Ms. Frankhouser does not base her claims on the Manual, nor is the Manual or its contents integral to her First Amended Complaint. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (refusing to consider extraneous documents at the motion-to-dismiss stage because they were not "integral to" the complaint). In fact, she does not mention the Manual or any CCCTC policies regarding computer use. *See Stratechuk v. Bd. of Educ.*, 200 F. App'x 91, 94 (3d Cir. 2006) (finding that a complaint was not based on the policy at issue, and thus the policy could not be considered when evaluating a motion to dismiss, because

15

the complaint did not quote from the policy or mention the policy). Thus, the Court will not consider the Manual when evaluating Ms. Frankhouser's First Amended Complaint and Defendants' Partial Motions to Dismiss.[8]

Moreover, even if the Court found it proper to consider the Manual when deciding the pending Motions, the Court would still decline to dismiss Count II. The Manual explains that those to whom CCCTC's computer-use policy applies have no expectation of privacy in anything they "create, store, send, delete, receive, or display" on CCCTC's Internet, computers, or network. (ECF No. 21-1 at 3.) Ms. Frankhouser's allegations, however, do not fall clearly within the bounds of this policy, as she alleges that she never "housed any of her personal files on or accessed any of her personal files through" CCCTC's computers or servers. (ECF No. 17 ¶¶ 57, 97; *see also* ECF No. 24 at 13.) Thus, by attempting to reply on the Manual at this stage, Defendants misconstrue Ms. Frankhouser's allegations.

---

[8] Without the Manual on which to rely, Defendants' considerable dependence on *Dombrowski v. Governor Mifflin Sch. Dist.*, Civil Action No. 11-1278, 2012 WL 2501017 (E.D. Pa. June 29, 2012), is misplaced. In the Eastern District of Pennsylvania's decision in *Dombrowski*, the Court relied extensively on the language of the defendant's technology policy, the application of that policy to the facts, and the plaintiff's awareness of the policy. *Id.* at *6. Because the Court cannot consider CCCTC's Manual at this stage, this case is not analogous to the situation in *Dombrowski*. Further, Defendants' other citations to case law are inapposite, as some of them relate to the right to privacy protected by the Fourteenth Amendment's substantive due process provision. *See, e.g., Whalen v. Roe*, 429 U.S. 589, 598 n. 23 (1977) (explaining that the right to privacy is founded in the Fourteenth Amendment's concept of personal liberty (citing *Roe v. Wade*, 410 U.S. 113, 152-53 (1973))); *Malleus v. George*, 641 F.3d 560, 563-64 (3d Cir. 2011) (addressing an alleged violation of the right to privacy protected by the Fourteenth Amendment). In contrast, here, the Court reads Count II as alleging a violation of Ms. Frankhouser's Fourth Amendment rights with respect to Defendants' unreasonable search of the Dropbox. The Court interprets Ms. Frankhouser's reference to her "right to privacy" to be an assertion that she had a reasonable expectation of privacy in her Dropbox, as she argues in her Brief in Opposition. (ECF No. 24 at 11-12.) While the Court will not foreclose the possibility that this other case law could be relevant to the ultimate resolution of Ms. Frankhouser's claims, at this point it is not persuasive.

The Court will therefore **DENY** CCCTC, Mr. Jefferies, and Mr. Paladina's Motion for Partial Dismissal as to Count II of the First Amended Complaint.[9]

### 4. Mr. McClelland's Motion for Partial Dismissal

In addition to joining in CCCTC, Mr. Jefferies, and Mr. Paladina's reasonable expectation of privacy arguments described above (*see* ECF No. 29 ¶¶ 4-5), Mr. McClelland argues that he is not an appropriate defendant for Ms. Frankhouser's Fourth Amendment claim. The Court agrees that Ms. Frankhouser's Fourth Amendment claim is not properly asserted against Mr. McClelland.

According to the First Amended Complaint, the entirety of Mr. McClelland's involvement in this matter is that (1) he had animus toward Ms. Frankhouser, (2) he delivered the photographs at issue to Mr. Paladina and Mr. Jefferies after receiving the photographs from Mr. Walk, and (3) that he told people that Ms. Frankhouser had "hundreds of naked pictures" on her work computer. (*Id.* ¶¶ 50, 75-76.) Ms. Frankhouser then claims, with no elaboration, that Mr. McClelland "acted in concert with Mr. Walk, and was well aware that Mr. Walk had violated Ms. Frankhouser's privacy." (*Id.* ¶¶ 81, 105, 127.)

Ms. Frankhouser does not allege that Mr. McClelland assisted Mr. Walk in accessing Ms. Frankhouser's Dropbox account and obtaining her personal photographs, which is the basis for Ms. Frankhouser's Fourth Amendment claim. Furthermore, Ms. Frankhouser's conclusory assertion that "Mr. Walk and Mr. McClelland conspired together and worked in concert" does

---

[9] Because CCCTC, Mr. Paladina, and Mr. Jefferies did not raise other grounds for dismissal of particular Defendants as to Count II, the Court declines to consider *sua sponte* whether CCCTC, Mr. Paladina, and Mr. Jefferies are proper Defendants for this § 1983 claim. Defendants may make arguments regarding the involvement (or lack of involvement) of particular Defendants in the alleged search of Ms. Frankhouser's Dropbox account at the summary judgment stage, should they so choose.

not plausibly allege that Mr. McClelland had contemporaneous knowledge of Mr. Walk's alleged violation of Ms. Frankhouser's Fourth Amendment rights. *See Chavarriaga*, 806 F.3d at 220 (affirming the dismissal of two defendants who the plaintiff alleged "were 'well aware of some or all of the wrongdoing described [in the complaint], [but] did nothing to punish the wrongdoers . . . making themselves co-conspirators, aiders and abettors of the other individual defendants'" (alterations in original)). Instead, the well-pled allegations in the First Amended Complaint involving Mr. McClelland relate to conduct *after* Ms. Frankhouser claims her Fourth Amendment rights were violated. Thus, Count II must be dismissed as to Mr. McClelland.

The Court will therefore **GRANT** Mr. McClelland's Motion for Partial Dismissal as to Count II without prejudice.

### B. Count III—Violation of the Fourth Amendment

Count III also alleges a Fourth Amendment violation based on Mr. Walk's access of Ms. Frankhouser's private Dropbox account and CCCTC's use of the unlawfully obtained photographs to force Ms. Frankhouser to resign. (ECF No. 17 ¶¶ 104, 106-107.)

Defendants CCCTC, Mr. Jefferies, and Mr. Paladina move to dismiss this Count because Ms. Frankhouser did not have an expectation of privacy in information stored or displayed on her work computer. (ECF No. 21 at 12.)

In response, Ms. Frankhouser reiterates that she had a reasonable expectation of privacy in her Dropbox account because she did not view or store the relevant photographs on her CCCTC-issued computer. (ECF No. 24 at 13.)

Mr. Walk and Mr. McClelland also seek to dismiss Count III. They argue that Count III must be dismissed because Ms. Frankhouser failed to bring her claim pursuant to § 1983 or *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). (ECF No. 23 at 9-10.)

Ms. Frankhouser responds with the following: "Whether the [C]ourt wishes to view Count II and Count III as separate claims . . . or whether it wishes to combine the violation of rights under the 4th Amendment and the mechanism of obtaining a remedy under subsection 1983, the result is the same against Mr. Walk and Mr. McClellan[d]." (ECF No. 25 at 12.)

The Court agrees with Mr. Walk and Mr. McClelland that Count III must be dismissed. Section 1983 is the appropriate vehicle through which a plaintiff may assert a claim against state officials for violations of the Fourth Amendment. *See* 42 U.S.C. § 1983. Normally, the Court would construe a claim alleging a violation of the Fourth Amendment as a claim pursuant to § 1983; here, however, there is no reason to so construe Count III, as Ms. Frankhouser has already pleaded a claim for a Fourth Amendment violation pursuant to § 1983 in Count II. Thus, the Court will **DISMISS** Count III with prejudice. However, to the extent Count III contains different factual bases from Count II, Ms. Frankhouser is permitted to amend Count II to include any additional necessary allegations from the now-dismissed Count III.

## C. Count V—Violation of the Fourteenth Amendment

Ms. Frankhouser asserts Count V for violations of her Fourteenth Amendment rights against CCCTC. CCCTC moves for dismissal of this Count.

### 1. The Parties' Arguments

Under Count V, Ms. Frankhouser claims that as a government employee, she had a right to due process before her forced resignation. (ECF No. 17 ¶ 117.) Specifically, she argues that due process required that she be afforded a hearing. (*Id.* ¶ 118.)

CCCTC does not dispute that Ms. Frankhouser had a property interest in her continued public employment. (ECF No. 21 at 16.) However, CCCTC argues that it did not deprive Ms. Frankhouser of her property interest because she voluntarily resigned from her employment. (*Id.* at 17-18.)

In response, Ms. Frankhouser contends that her resignation was not voluntary because she was coerced to resign so as to avoid being reported to the state licensing board and to protect her professional reputation. (ECF No. 24 at 16-17.)

### 2. Legal Standard

Under the Fourteenth Amendment to the U.S. Constitution, no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To prevail on a procedural due process claim, a litigant must show (1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law." *Burns v. Pa. Dep't of Corr.*, 544 F.3d 279, 285 (3d Cir. 2008) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir. 1997)). Courts look to state law to determine whether an asserted right is a property interest that is protected by the Due Process Clause. *Id.* (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)).

Here, it is undisputed that Ms. Frankhouser had a property interest in continued employment by CCCTC. (ECF No. 21 at 16; ECF No. 24 at 16); *see Judge v. Shikellamy Sch. Dist.*, 135 F. Supp. 3d 284, 293 (M.D. Pa. 2015); *Judge v. Shikellamy Sch. Dist.*, Case No. 4:15-CV-00551, 2017 WL 1550042, at *8 (M.D. Pa. May 1, 2017). What is disputed, however, is whether CCCTC deprived Ms. Frankhouser of that property interest when it forced her to resign.

The Third Circuit has explained the circumstances in which a resignation is voluntary as follows:

> Employee resignations and retirements are presumed to be voluntary. This presumption remains intact until the employee presents evidence to establish that the resignation or retirement was involuntarily procured. If an employee retires of his own free will, even though prompted to do so by some action of his employer, he is deemed to have relinquished his property interest in his continued employment for the government, and cannot contend that he was deprived of his due process rights. There appear to be two circumstances in which an employee's resignation or retirement will be deemed involuntary for due process purposes: (1) when the employer forces the resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material fact to the employee.

*Leheny v. City of Pittsburgh*, 183 F.3d 220, 227-28 (3d Cir. 1999) (citations omitted). Ms. Frankhouser contends that she falls within the first involuntary resignation circumstance: forced resignation by coercion or duress. (ECF No. 24 at 16.)

"In determining whether a resignation was procured involuntarily due to coercion or duress, courts have considered several factors, including: (1) whether the employee was presented with an alternative to resignation; (2) whether the employee understood the nature of the choices she was given; (3) whether the employee had a reasonable time to choose; (4) whether the employee was permitted to select the effective date of resignation; and (5) whether the employee had the advice of counsel." *Judge*, 135 F. Supp. 2d at 293 (citing *O'Connell v. Cty. of*

21

*Northampton*, 79 F. Supp. 2d 529, 533 (E.D. Pa. 1999)); *Judge v. Shikellamy Sch. Dist.*, 905 F.3d 122, 125 (3d Cir. 2018).. "[T]he ultimate inquiry is an objective one and subjective belief by the employee that her only option is to resign is irrelevant." *Judge*, 2017 WL 1550042, at *10. "Similarly irrelevant to the inquiry is the mere fact that plaintiff is faced with unpleasant alternatives, as the existence of such alternatives still affords plaintiff a choice." *Id.*

### 3. CCCTC's Motion for Partial Dismissal

Here, Ms. Frankhouser alleges that she was presented with an alternative to resignation: declining to voluntarily resign but risking her certifications and other consequences of Mr. Paladina contacting the Pennsylvania Department of Education. (ECF No. 17 ¶ 64.) She also alleges that she did not understand the significance of the resignation because she was only given one day to review and sign the Agreement and did not have enough time to obtain legal advice. (*Id.* ¶¶ 63, 70.) There is no allegation regarding whether she was permitted to choose the effective date of her resignation.

A case from the Middle District of Pennsylvania, *Judge v. Shikellamy Sch. Dist.*, 135 F. Supp. 3d 284 (M.D. Pa. 2015), is particularly persuasive under the present circumstances.[10] In *Judge*, the plaintiff, an elementary school principal, was summoned to a meeting with the school district superintendent without being given advance notice as to the purpose of the meeting. *Id.* at 289. After the meeting, the superintendent gave the plaintiff a letter explaining that he learned the

---

[10] In support of its argument in favor of dismissal of Count V, CCCTC cites to *Judge v. Shikellamy Sch. Dist.*, Case No. 4:15-CV-00551, 2017 WL 1550042 (M.D. Pa. May 1, 2017). Though involving the same underlying facts as the 2015 *Judge* decision, the 2017 decision is less persuasive as applied to this case because the 2017 decision involved a motion for summary judgment instead of a motion to dismiss. This difference in procedural posture significantly affects the utility of the 2017 decision as compared to the 2015 decision at this juncture.

plaintiff had been involved in a traffic stop on suspicion of driving under the influence ("DUI"). *Id.* The letter requested that the plaintiff resign by 12:30 p.m. the next day. *Id.* The letter stated that if the plaintiff did not resign and DUI charges were filed against her, the superintendent would issue a written statement of charges for dismissal, which could have an impact on the plaintiff's status with the Department of Education. *Id.*

The court found that the plaintiff alleged that she had one day to choose whether she would resign. *Id.* at 293. Although it was not clear whether the plaintiff had the advice of counsel nor whether she was permitted to select the effective date of her resignation, she sufficiently alleged, for purposes of the motion-to-dismiss stage, that the school district deprived her of a property interest in continued public employment. *Id.* at 293-94.

Similar to the circumstances of *Judge*, Ms. Frankhouser was told that she could either voluntarily resign or face potential consequences with the Department of Education. (ECF No. 17 ¶ 64.) Ms. Frankhouser was also given only a day to make her decision (*id.* ¶¶ 63, 70), which led the court in *Judge* to conclude that the plaintiff had sufficiently alleged a deprivation of her property interest in continued public employment, *Judge*, 135 F. Supp. 3d at 293. Finally, Ms. Frankhouser's situation appears more coercive than the facts of *Judge*, as Ms. Frankhouser clearly alleges that she did not have time to obtain counsel to assist her in determining whether she should resign. (ECF No. 17 ¶ 70.)

The Court thus finds that Ms. Frankhouser has alleged that CCCTC deprived her of a property interest by forcing her to resign through coercion. She also alleged that this deprivation occurred without due process because she was not afforded a hearing. Ms. Frankhouser has thus

23

plausibly alleged a procedural due process claim. The Court will **DENY** CCCTC's Motion for Partial Dismissal at to Count V.

### D. Count VI—Invasion of Privacy

Ms. Frankhouser brings Count VI, a Pennsylvania common law claim for invasion of privacy, against all Defendants. Only CCCTC, Mr. Jefferies, and Mr. Paladina move to dismiss this Count.

#### 1. The Parties' Arguments

In Count VI, Ms. Frankhouser asserts that she had a reasonable expectation of privacy in her personal Dropbox account and that Mr. Walk illegally accessed her Dropbox in order to gather her private photographs and provide them to other Defendants. (ECF No. 17 ¶¶ 121-24.)

CCCTC, Mr. Paladina, and Mr. Jefferies move to dismiss this Count because Ms. Frankhouser did not have an expectation of privacy in the storage and display of inappropriate photographs on her CCCTC-issued computer. (ECF No. 21 at 19.)

Ms. Frankhouser responds that the photographs at issue were not accessed or saved on her work computer and that she therefore had an expectation of privacy in the photographs stored in her Dropbox account. (ECF No. 24 at 18.)

#### 2. Legal Standard

In Pennsylvania, "invasion of privacy" encompasses four distinct torts—(1) intrusion upon seclusion, (2) appropriation of name or likeness, (3) publicity given to private life, and (4) publicity placing a person in a false light. *Krajewski v. Gusoff*, 53 A.3d 793, 805 (Pa. Super. Ct. 2012); *Tagouma v. Investigative Consultant Servs., Inc.*, 4 A.3d 170, 174 (Pa. Super. Ct. 2010) (quoting *Doe v. Wyoming Valley Health Care Sys., Inc.*, 987 A.2d 758, 765 (Pa. Super. Ct. 2009)). Ms.

Frankhouser and Defendants appear to agree that Count VI is a claim for intrusion upon seclusion. (ECF No. 21 at 18; ECF No. 24 at 18.)

The Pennsylvania Suggested Standard Civil Jury Instructions define intrusion upon seclusion as follows:

One who intentionally intrudes, physically or otherwise, on the solitude or seclusion of another person, or the person's private affairs or concerns, is responsible to that person for the harm suffered as a result of this invasion of privacy if a similar intrusion upon the solitude or seclusion or private affairs and concerns of a reasonable person would be highly offensive to that reasonable person.

Pa. SSJI (CIV), 17.220 (4th ed. 2018 supp.); *DeBlasio v. Pignoli*, 918 A.2d 822, 824-25 (Pa. Cmmw. Ct. 2007). "A defendant is liable for intrusion upon seclusion only when he *intrudes into a private place*, or otherwise invades a private seclusion about a plaintiff's person or affairs." *DeBlasio*, 918 A.2d at 825 (citing *Harris by Harris v. Easton Pub'g Co.*, 483 A.2d 1377 (Pa. Super. Ct. 1984)).

### 3. CCCTC, Mr. Paladina, and Mr. Jefferies's Motion for Partial Dismissal

Defendants argue that Ms. Frankhouser did not have an expectation of privacy in the storage or display of inappropriate photographs on her CCCTC computer such that her intrusion upon seclusion claim must be dismissed. Based on the intrusion upon seclusion standard articulated above, the Court interprets Defendants' argument as challenging whether Ms. Frankhouser met the "private affairs" and "highly offensive to a reasonable person" elements.

As generally explained in Section V.A.3, *supra*, Ms. Frankhouser asserts that Defendants intruded on her private affairs when Mr. Walk accessed her personal Dropbox account using her private username and password (which he stole when he was supposed to be fixing her hard drive). Mr. Walk allegedly took Ms. Frankhouser's personal photographs of her boyfriend and

25

parties, and, with the involvement of some of the other Defendants, distributed those photographs. These allegations clearly involve intrusions on Ms. Frankhouser's private affairs—she alleges that the Dropbox was her private account with photographs relating to her personal life. Moreover, the Court cannot find at this stage that these actions would not be highly offensive to a reasonable person. Ms. Frankhouser's invasion of privacy claim must survive Defendants' Motion for Partial Dismissal.

By arguing that Ms. Frankhouser did not have a reasonable expectation of privacy in photographs on her work computer, Defendants again misconstrue Ms. Frankhouser's allegations. She does not allege that she stored or viewed the photographs from her Dropbox on her work computer, which would change the analysis; instead, she asserts that she never stored or accessed these photographs on her work computer.[11] (ECF No. 17 ¶¶ 57, 78, 123.)

The Court will therefore **DENY** Defendants' Motion for Partial Dismissal as to Count VI.[12]

## E. Count VII—Defamation Per Se

Ms. Frankhouser brings Count VII against all Defendants for defamation per se. Only CCCTC, Mr. Paladina, and Mr. Jefferies move to dismiss this Count.

### 1. The Parties' Arguments

Ms. Frankhouser alleges that various individuals at CCCTC publicly stated that she was terminated for inappropriate photographs on her CCCTC-issued phone and computer. (ECF No.

---

[11] Moreover, as explained *supra*, the Court cannot consider CCCTC's Manual and arguments related thereto at the motion-to-dismiss stage.

[12] Because CCCTC, Mr. Paladina, and Mr. Jefferies did not raise other grounds for dismissal of particular Defendants as to Count VI, the Court declines to consider *sua sponte* whether CCCTC, Mr. Paladina, and Mr. Jefferies are proper Defendants for this claim. Defendants may make arguments regarding the involvement (or lack of involvement) of particular Defendants in the alleged intrusion upon Ms. Frankhouser's seclusion at the summary judgment stage, should they so choose.

17 ¶¶ 128-29.) "[S]ources within CCCTC" also made similar statements to local newspapers. (*Id.* ¶ 130.) Ms. Frankhouser claims these rumors caused her to lose employment opportunities and suffer extreme emotional and financial harm. (*Id.* ¶¶ 131-32.)

Defendants argue that Ms. Frankhouser failed to allege that Mr. Paladina or Mr. Jefferies made defamatory statements about her and that Count VII must be dismissed as to these Defendants. (ECF no. 21 at 22.) Moreover, Defendants assert that the alleged defamatory statements are not capable of defamatory meaning because they are true. (*Id.* at 22-23.)

Plaintiff responds that the alleged defamatory statements must have come from Defendants because Defendants were the only individuals with knowledge of the photographs. (ECF No. 24 at 21.) Further, she states that the defamatory statements were not true because she never stored or accessed inappropriate photographs on her CCCTC-issued computer. (*Id.* at 22.)

### 2. Legal Standard

Defamation "is the tort of detracting from a person's reputation, or injuring a person's character, fame, or reputation, by false and malicious statements." *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 334 (Pa. Super. Ct. 2008). In Pennsylvania, a defamation plaintiff has the burden of proving seven elements in a defamation action: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. 42 Pa. Cons. Stat. § 8343(a).

A statement has defamatory character if it is untrue, unjustifiable, and injurious to the reputation of another. *Joseph*, 959 A.2d at 334.

### 3. CCCTC, Mr. Paladina, and Mr. Jefferies's Motion for Partial Dismissal

The Court agrees that Mr. Paladina and Mr. Jefferies must be dismissed as to Count VII. Ms. Frankhouser does not allege in her First Amended Complaint that Mr. Paladina and Mr. Jefferies made defamatory statements to others regarding her forced resignation. Instead, the only individuals specifically identified by Ms. Frankhouser as making defamatory statements are Mr. McClelland, non-party Jess McKendrick, and Mr. Walk. (ECF No. 17 ¶¶ 73-74, 129.) Ms. Frankhouser's general allegations that rumors "spread[] through other members of CCCTC staff from top to bottom" and that newspaper articles were based on "sources within CCCTC" are too speculative and vague as to Mr. Paladina and Mr. Jefferies's involvement to survive a motion to dismiss. (*Id.* ¶¶ 129-30); *see Jackson v. Trs. of Univ. of Pa.*, CIVIL ACTION No. 17-4645, 2019 WL 309729, at *7-8 (E.D. Pa. Jan. 23, 2019) (dismissing a libel claim because the plaintiff did not allege who made the statement at issue); *White v. Baldwin Sch.*, Civil Action No. 12-4111, 2012 WL 4963688, at *4 (E.D. Pa. Oct. 17, 2012) (finding the plaintiff's assumption that defamatory communication originated from a particular source "far too speculative a reed to hang a defamation charge upon"); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

Further, Ms. Frankhouser's argument that she should at least be entitled to discovery on "which specific named Defendants were responsible for defaming Plaintiff's good name and character" is unpersuasive—this Court does not permit discovery based on speculation. *See, e.g.,*

*Roadman v. Select Specialty Hosp.*, Case No. 3:16-cv-246, 2018 WL 6524005, at *5 (W.D. Pa. Dec. 12, 2018) (Gibson, J.).

As to CCCTC, Defendants argue that the alleged defamatory statements were not capable of defamatory meaning because they were true. (ECF No. 21 at 22.) The alleged defamatory statements all involve assertions that Ms. Frankhouser was terminated for having inappropriate photographs on her CCCTC-issued computer, including photographs of her molesting her grandchildren. (ECF No. 17 ¶¶ 73-74, 128-30.) As explained above, however, Ms. Frankhouser alleges that she never accessed or stored inappropriate photographs on her work computer. (*Id.* ¶¶ 57, 78, 97, 104, 123, 128-30.) Thus, the Court finds that Ms. Frankhouser plausibly alleges that the defamatory statements were untrue.

Defendants make no other arguments as to why the defamation claim should be dismissed as to CCCTC. Therefore, the Court will **DENY** the Motion for Partial Dismissal of Count VII as to CCCTC. The Court will **GRANT** the Motion for Partial Dismissal of Count VII as to Mr. Jefferies and Mr. Paladina without prejudice.

## F. Count VIII—Intentional Infliction of Emotional Distress

Count VIII is asserted against all Defendants. All Defendants move to dismiss this Count.

### 1. The Parties' Arguments

Count VIII of Ms. Frankhouser's First Amended Complaint brings a claim for intentional infliction of emotional distress ("IIED"). According to this Count, Defendants are liable for IIED because they allowed and encouraged the theft of Ms. Frankhouser's personal photographs and attempted to damage her good reputation. (ECF No. 17 ¶ 137.) Ms. Frankhouser argues that the way in which the photographs were stolen and the manner in which they were used were extreme

29

and outrageous. (*Id.* ¶ 138.) Further, she claims that Defendants' actions caused damage to her career and reputation, as well as causing weight loss, sleeping difficulty, and anxiety. (*Id.* ¶¶ 139-40.)

Defendants argue that this Count should be dismissed with prejudice because Ms. Frankhouser has not alleged the requisite extreme and outrageous conduct on the part of these Defendants. (ECF No. 21 at 23; ECF No. 23 at 11-12.) Mr. Walk and Mr. McClelland also argue for the dismissal of this Count because Plaintiff failed to plausibly allege that she suffered severe emotional distress. (ECF No. 23 at 10.)

Ms. Frankhouser counters that she has plausibly alleged extreme and outrageous conduct and severe emotional distress. (ECF No. 24 at 25; ECF No. 25 at 15-16.) According to Ms. Frankhouser:

> Plaintiff was subjected to threats, which were carried out, to discredit her within the community by spreading lies about her CCCTC-issued computer containing hundreds of illicit photographs. Not only was this lie promulgated by all of the named Defendants in this matter, but additional accusations that Plaintiff possessed photographs or video wherein she was sexually molesting her own grandchildren and that she possessed pornographic images of children were spread. Few accusations within civilized society, especially within the educational community, are so outrageous and extreme as claims of pedophilia and sexually preying upon children.

(ECF No. 24 at 25 (citations omitted); ECF No. 25 at 15 (citations omitted).)

## 2. Legal Standard

The Pennsylvania Supreme Court has not yet expressly recognized a cause of action for IIED, *see Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000); *Reedy v. Evanson*, 615 F.3d 197, 231 (3d Cir. 2010), but the Pennsylvania Superior Court has recognized this cause of action.

*See, e.g., Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005); *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, 1122 (Pa. Super. Ct. 2004). According to the Superior Court:

> [O]ur Supreme Court has indicated that in order for a plaintiff to prevail on such a claim, he or she must, at the least, demonstrate intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff. In addition, a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct.

*Reeves*, 866 A.2d at 1122-23 (footnote omitted) (citing *Hoy v. Angelone*, 720 A.2d 745, 753-54 & n.10 (Pa. 1998); *Fewell v. Besner*, 664 A.2d 577, 582 (Pa. Super. Ct. 1995)). "'Outrageous or extreme conduct' has been defined by the appellate courts of [Pennsylvania] as conduct that is 'so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society.'" *Id.* at 1122 n.5 (quoting *Hoy*, 720 A.2d at 754). "[I]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Hoy*, 720 A.2d at 754 (quoting Restatement (Second) of Torts § 46 cmt. d (Am. Law. Inst. 1965); *Daughen v. Fox*, 539 A.2d 858, 861 (Pa. Super. Ct. 1988)). "Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have [] presented only the most egregious conduct." *Id.* (citations omitted); *see Doe v. Plum Borough Sch. Dist.*, 2:17-cv-00032, 2017 WL 3492542, at *11 (W.D. Pa. Aug. 15, 2017) (listing cases).

"[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988); *see Hoy*, 720 A.2d

31

at 754. "In the context of a dismissal [from employment], it has been noted that 'while loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event' and cannot provide a basis for recovery for intentional infliction of emotional distress." *Cox*, 861 F.2d at 395 (quoting *Brieck v. Harbison-Walker Refractories*, 624 F. Supp. 363, 367 (W.D. Pa. 1985), *aff'd in relevant part*, 822 F.2d 52 (3d Cir. 1987)).

Moreover, in terms of the physical harm requirement, the Pennsylvania Superior Court has found allegations of "depression, nightmares, stress, and anxiety . . . [that] were of a continuing nature and have required [the plaintiff] to obtain psychological treatment" to be sufficient allegations of physical harm. *Love v. Cramer*, 606 A.2d 1175, 1179 (Pa. Super. Ct. 1992); *see Weaver v. O'Connor*, No. 1291 WDA 2013, 2014 WL 10936773, at \*4 (Pa. Super. Ct. May 28, 2014) (finding that allegations of mental anguish, pain, harassment, unreasonable confinement, continuous physical and mental harm, and loss of sleep to be sufficient to permit a cause of action for IIED to survive preliminary objections).

### 3. CCCTC, Mr. Paladina, and Mr. Jefferies's Motion for Partial Dismissal

Here, CCCTC, Mr. Paladina, and Mr. Jefferies dispute that Ms. Frankhouser has sufficiently alleged extreme and outrageous conduct.

The Court agrees that as to Mr. Paladina, Ms. Frankhouser failed to plausibly allege extreme and outrageous conduct. Ms. Frankhouser's allegation that Mr. Paladina falsely accused her of storing inappropriate photographs on her CCCTC-issued computer and then forced her to resign are simply not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *Hoy*, 720 A.2d at 754 (quoting *Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122,

32

1125 (Pa. Super. Ct. 1987)). Mr. Paladina's alleged actions do not come close to the egregiousness of the situations in which courts have found sufficient IIED claims. *See id.* (describing cases). Forcing an employee to resign after that employee is accused of possessing inappropriate photographs on school property, even if those accusations turn out to be false, does not make this case one of the "extremely rare" cases in the employment context that rise to the level of extreme and outrageous conduct. *See Cox*, 861 F.2d at 395; *see also Landmesser v. United Air Lines, Inc.*, 102 F. Supp. 2d 273, 281 (E.D. Pa. 2000) ("Employment termination is often an unpleasant business, but the attending routine unpleasantness that can surround a termination does not elevate the termination to the level of outrageousness . . . ."); *Tukesbrey v. Midwest Transit, Inc.*, 822 F. Supp. 1192, 1201 (W.D. Pa. Feb. 19, 1993) ("Wrongful discharge from employment typically does not rise to the level of outrageousness required to support a claim for emotional distress.").

As for Mr. Jefferies, Ms. Frankhouser's allegations involve Mr. Jefferies's sexually harassing behavior and retaliation against her when she reported him. "[A]s a general rule, sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress." *Andrews v. City of Phila.*, 895 F.2d 1469, 1487 (3d Cir. 1990). Instead, for allegations of sexual harassment to rise to the level of extreme and outrageous conduct, courts have often required both sexual harassment and retaliation against the harassed employee. *Id.* (citing *Bowersox v. P.H. Glatfelter Co.*, 677 F. Supp. 307, 310-11 (M.D. Pa. 1988)); *Hoy*, 720 A.2d at 754.

Here, Ms. Frankhouser alleges that Mr. Jefferies repeatedly made sexual comments to her and stared at her in a sexual manner. (ECF No. 17 ¶¶ 15-17.) She also states that Mr. Jefferies retaliated against her "in the form of enhanced job scrutiny and generally negative and

33

unfavorable behavior" when she reported his harassment. (*Id.* ¶ 18.) These allegations are not particularly specific; however, at this stage, the Court must construe Ms. Frankhouser's assertions liberally. The Court thus concludes that Ms. Frankhouser has sufficiently alleged extreme and outrageous conduct as to Mr. Jefferies so as to survive Defendants' Motion for Partial Dismissal. *See Williams v. U.S. Airways, Inc.,* Civil Action No. 06-4797, 2007 WL 2667981, at *3 (E.D. Pa. Sept. 5, 2007) (allowing an IIED claim to survive a motion to dismiss when the plaintiff alleged that the defendant turned a blind eye to sexual harassment and retaliated against her for complaining about the harassment); *Bowersox,* 677 F. Supp. at 310-11 (concluding that an IIED claim withstood a motion to dismiss when the plaintiff alleged sexual harassment and that the defendant made her job impossible to perform when she refused his advances).

Regarding CCCTC, the First Amended Complaint alleges that CCCTC permitted a hostile work environment to flourish in which Mr. Jefferies was able to sexually harass Ms. Frankhouser and retaliate against her when she reported him. (ECF No. 17 ¶¶ 89-90.)   Ms. Frankhouser also appears to allege that CCCTC, through Mr. Paladina, forced Ms. Frankhouser to resign (1) without providing her with a hearing and (2) while knowing the photographs on which the resignation was based were unlawfully obtained and were never accessed on CCCTC-issued computers. (*Id.* ¶¶ 106-07, 1117-19).   CCCTC then replaced Ms. Frankhouser with a male employee who was given significantly higher pay raises than Ms. Frankhouser had been given for the same position. (*Id.* ¶ 85.)

As explained above, Ms. Frankhouser's forced resignation cannot form the basis of an IIED claim, even if that forced resignation was done without complying with the mandates of due process. *See Landmesser,* 102 F. Supp. 2d at 281. Assuming CCCTC knew that the

34

photographs were unlawfully obtained by Mr. Walk and that it knew Ms. Frankhouser never actually accessed the photographs on her work computer, this Court cannot find that it is "beyond all possible bounds of decency" to force an employee to resign after uncovering "borderline explicit" photographs and "pictures of parties she had attended" in her possession. (ECF No. 17 ¶¶ 34, 36.)

As for the sexual harassment, allowing an employee to sexually harass another employee and to retaliate against the harassed employee is sufficient to state a claim for IIED. *See Williams*, 2007 WL 2667981, at \*3 (allowing an IIED claim to survive a motion to dismiss when the plaintiff alleged that her employer turned a blind eye to sexual harassment and retaliated against her after she complained about the harassment).

The Court will thus **DISMISS** Count VIII as to Mr. Paladina without prejudice, but will **DENY DISMISSAL** as to Mr. Jefferies and CCCTC.

### 4. Mr. Walk and Mr. McClelland's Motion for Partial Dismissal

Mr. Walk and Mr. McClelland also argue for dismissal of Count VIII based on Ms. Frankhouser's failure to plausibly allege extreme and outrageous conduct as well as extreme emotional distress.

The Court agrees that Ms. Frankhouser failed to allege extreme and outrageous conduct, as defined by Pennsylvania law, as to Mr. McClelland. The most negative allegation regarding Mr. McClelland is that he told another CCCTC employee that Ms. Frankhouser had videos of her molesting her grandchildren on her work computer. (ECF No. 17 ¶ 73.) The Court recognizes that spreading child molestation rumors about a grandparent is particularly vicious. However, as explained above, courts rarely find extreme and outrageous conduct in the employment

context unless there are allegations of sexual harassment and retaliation, which are not at issue with regard to Mr. McClelland. Furthermore, courts have found that spreading rumors about an employee's termination does not rise to the level of extreme and outrageous conduct, as it is defined by Pennsylvania law. *See Michalow v. Pasquerilla*, 2:16-CV-00464-CRE, 2016 WL 7404560, at *7 (W.D. Pa. Dec. 22, 2016) (citing *Landmesser*, 102 F. Supp. 2d at 281). Finally, assuming Mr. McClelland knew these rumors about Ms. Frankhouser were not true, Mr. McClelland's alleged intent and malice are not enough to state a claim for IIED. In other cases, "[i]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort." *Hoy*, 720 A.2d at 754 (alteration in original) (quoting Restatement (Second) of Torts § 46 cmt. d; *Daughen*, 539 A.2d at 861). Thus, with sympathy toward Ms. Frankhouser's position, the Court finds that the IIED claim against Mr. McClelland must fail based on Pennsylvania law's definition of "extreme and outrageous conduct."

Finally, the Court will not dismiss Count VIII as to Mr. Walk. Ms. Frankhouser alleges that, while fixing her computer pursuant to his duties as CCCTC's Internet Technology Administrator, Mr. Walk accessed her passwords spreadsheet, used her password to access her personal Dropbox account, and took personal photographs (of a sexual nature) from that Dropbox and distributed them in an effort to get her fired and damage her reputation. Mr. Walk allegedly took these actions due to his animus toward Ms. Frankhouser after she failed to hire his wife for an open position at CCCTC. The alleged behavior is more than an "annoyance" or "inconsiderate and unkind" act. *See* Restatement (Second) of Torts § 46 cmt. d. Indeed, it is, at

the very least, an unsavory abuse of Mr. Walk's position and access at CCCTC. *See Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1274 (3d Cir. 1979) (finding, when faced with "intolerable professional conduct" by a physician, that there was sufficient evidence of liability for IIED); Restatement (Second) of Torts § 46 cmt. e ("The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect his interests."). Although it is arguable whether Mr. Walk's conduct went "beyond all possible bounds of decency," the Court finds that, at this stage, Ms. Frankhouser has sufficiently alleged extreme and outrageous conduct.

Moreover, Ms. Frankhouser has sufficiently alleged severe emotional distress. "To show that distress is severe, Pennsylvania courts have required that a plaintiff allege physical injury." *Fewell v. Besner*, 664 A.2d 577, 582 (Pa. Super. Ct. 1995). Allegations of "physical manifestations of emotional suffering, i.e. depression, nightmares, stress, and anxiety," have been found sufficient, particularly when the injuries were continuous and required psychological treatment. *Love*, 606 A.2d at 1179; *see Kevin H. v. Redstone Twp.*, Civil Action No. 18-454, 2018 WL 5619708, at *5 (W.D. Pa. Oct. 30, 2018) (finding allegations of physical harm to be sufficient when the plaintiffs alleged that they suffered, *inter alia*, mental anguish, psychological problems, and embarrassment). Because Ms. Frankhouser alleges that Defendants' actions caused weight loss, difficulty sleeping, and anxiety (ECF No. 17 ¶ 140), she has met this standard.

Based on the foregoing, the Court will **GRANT** the Motion for Partial Dismissal of Count VIII as to Mr. McClelland without prejudice. The Court will **DENY** the Motion as to Mr. Walk.

## VI. Conclusion

To summarize, Defendants' Motions for Partial Dismissal (ECF Nos. 20,22) are

**GRANTED IN PART** and **DENIED IN PART** as follows:

- As to Count II, Court **GRANTS** the Motion for Partial Dismissal of Mr. McClelland without prejudice, but **DENIES** the Motion as to Defendants CCCTC, Mr. Jefferies, and Mr. Paladina;

- As to Count III, the Court **GRANTS** the Motions for Partial Dismissal with prejudice;

- As to Count V, the Court **DENIES** the Motion for Partial Dismissal;

- As to Count VI, the Court **DENIES** the Motions for Partial Dismissal;

- As to Count VII, the Court **GRANTS** the Motion for Partial Dismissal as to Mr. Jefferies and Mr. Paladina without prejudice, but **DENIES** the Motion as to CCCTC; and

- As to Count VIII, the Court **GRANTS** the Motions for Partial Dismissal as to Mr. Paladina and Mr. McClelland without prejudice, but **DENIES** the Motions as to Mr. Jefferies, CCCTC, and Mr. Walk.

The Court also **DENIES** Mr. Walk and Mr. McClelland's Motion for Joinder (ECF No. 29) as moot.

The following claims thus remain: (1) Count I—Title VII violations against CCCTC; (2) Count II—42 U.S.C. § 1983 claim for Fourth Amendment violations against Defendants CCCTC, Mr. Jefferies, Mr. Paladina, and Mr. Walk; (3) Count IV—Violation of the Equal Pay Act against CCCTC; (4) Count V—Fourteenth Amendment violation against CCCTC; (5) Count VI—invasion of privacy against all Defendants; (6) Count VII—defamation per se against Defendants CCCTC, Mr. Walk, and Mr. McClelland; and (7) Count VIII—intentional infliction of emotional distress against CCCTC, Mr. Walk, and Mr. Jefferies.

A corresponding order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ELIZABETH FRANKHOUSER,  )      Case No. 3:18-cv-180
                                 )

        Plaintiff,  )      JUDGE KIM R. GIBSON
                                 )

      v.  )
                                 )

CLEARFIELD COUNTY CAREER AND  )
TECHNOLOGY CENTER, FRANKLIN  )
WALK, TODD JEFFERIES, GREGORY  )
PALADINA, and DOUG MCCLELLAND,  )
                                 )

        Defendants.  )

## ORDER

NOW, this ____19th____ day of March, 2019, upon consideration of Defendants Franklin Walk

and Doug McClelland's Motion for Partial Dismissal of Plaintiff's First Amended Complaint (ECF

No. 22) and Defendants Clearfield County Career and Technology Center, Todd Jefferies, and

Gregory Paladina's Motion for Partial Dismissal of Plaintiff's Amended Complaint Pursuant to

Rule 12(b)(6) (ECF No. 20), as well as Ms. Frankhouser's responses thereto (ECF Nos. 24, 25), and

for the reasons set forth in the Memorandum Opinion accompanying this Order, it is **HEREBY**

**ORDERED** that Defendants' Motions for Partial Dismissal are **GRANTED IN PART** and

**DENIED IN PART** as follows:

- As to Count II, Court **GRANTS** the Motion for Partial Dismissal of Mr. McClelland without prejudice, but **DENIES** the Motion as to Defendants CCCTC, Mr. Jefferies, and Mr. Paladina;

- As to Count III, the Court **GRANTS** the Motions for Partial Dismissal with prejudice;

- As to Count V, the Court **DENIES** the Motion for Partial Dismissal;

- As to Count VI, the Court **DENIES** the Motions for Partial Dismissal;

- As to Count VII, the Court **GRANTS** the Motion for Partial Dismissal as to Mr. Jefferies and Mr. Paladina without prejudice, but **DENIES** the Motion as to CCCTC; and

- As to Count VIII, the Court **GRANTS** the Motions for Partial Dismissal as to Mr. Paladina and Mr. McClelland without prejudice, but **DENIES** the Motions as to Mr. Jefferies, CCCTC, and Mr. Walk.

Ms. Frankhouser is **GRANTED** leave to amend her First Amended Complaint with respect to Count II, Count VII, and Count VIII. If she chooses to do so, Ms. Frankhouser shall file her amended complaint **on or before April 9, 2019**.

The Court also **DENIES** Mr. Walk and Mr. McClelland's Motion for Joinder (ECF No. 29) as moot.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**